268 So.2d 897 (1972)
LAKE HOWELL WATER AND RECLAMATION DISTRICT, a Drainage District of the State of Florida, et al., Appellants,
v.
STATE of Florida, and the Property Owners, Taxpayers and Citizens of Lake Howell Water and Reclamation District, County of Seminole, Including Nonresidents Owning Property Therein and Subject to Taxation, Appellees.
No. 42008.
Supreme Court of Florida.
October 18, 1972.
Rehearing Denied November 16, 1972.
Lawrence E. Dolan, of Pierce, Lewis & Dolan, Orlando, for appellants.
Harlan Tuck, of Giles, Hedrick & Robinson, Orlando, for Florida Standard Land Development Corp.
Seymour Benson, of Jacob, Benson & Holcomb, Orlando, for Robert V. Ward and Gloria Ward, his wife, et al.
Joseph M. Murasko, Fern Park, for Florida Ja Alai, Inc., appellees.
Robert L. Shevin, Atty. Gen., and Winifred L. Wentworth, Asst. Atty. Gen., Madison F. Pacetti, of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, for East County Water Control Dist., Seminole Water Control Dist., Acme Drainage Dist. and Shawano Drainage Dist., amici curiae.
*898 Thos. McE. Johnston, Karl B. Block, Jr. and Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for South Florida Conservancy Dist., Pahokee Drainage Dist., East Shore Drainage Dist. and Pelican Lake Sub Drainage Dist., amici curiae.
ERVIN, Acting Chief Justice:
We here consider the appeal of Lake Howell Water and Reclamation District, a drainage district of the State of Florida, and the Supervisors of the District, Appellants, from an interlocutory order of the Circuit Court of Seminole County, Florida, that dismissed Appellants' complaint for the validation of $275,000 drainage and reclamation bonds to finance the cost of construction of additional public drainage and reclamation improvements within the drainage district.
Appellees, the State of Florida, and certain property owners owning lands in the drainage district, responded to an order to show cause at a hearing on the validation proceedings and objected to the issuance of the bonds. As a result of such hearing, the interlocutory order on appeal was entered on December 9, 1971 by the Circuit Court. The order dismissed the complaint primarily on two grounds.
First, assessments levied by the Supervisors of Lake Howell Water and Reclamation District pursuant to Section 298.36, Florida Statutes, F.S.A. to amortize the proposed bonds, were taxes and were ad valorem in nature, requiring approval, therefore, of the District's qualified electors pursuant to Article VII, Section 12 of the 1968 Constitution of Florida, F.S.A. prior to filing the complaint for validation of the bonds.
Second, that in the election held to select the Appellant supervisors of the drainage district pursuant to Section 298.11, Florida Statutes, F.S.A., the "one man-one vote" principle of the United States Supreme Court was applicable and, therefore, the manner and method provided for such election under said section based upon the acreage owned in the district were arbitrary and invidious and denied to the qualified electors within the district due process and equal protection of the laws under the Constitution of the State of Florida and under the Fourteenth Amendment of the United States Constitution.
It is from the order dated December 9, 1971 (rehearing of which was denied January 10, 1972) dismissing Appellants' complaint for validation of bonds filed pursuant to the applicable provisions of Chapter 75, Florida Statutes, that Appellants have filed their interlocutory appeal to this Court.
Inasmuch as the chancery order dismissing the complaint specifically passed upon the validity of Section 298.11, Florida Statutes, F.S.A., we have jurisdiction to review the order because it appears that on final decree in the validation proceedings the issue of the constitutionality of the statute would be directly appealable here. Section 4(2), Article V, Florida Constitution, F.A.R. 4.2, 32 F.S.A.
We find no merit in the grounds assigned in the order dismissing the complaint and quash it for the reasons hereinafter set forth.
As to the point that the special assessment levied by the Supervisors of the Drainage District to amortize the proposed bonds was in effect an ad valorem levy of taxes requiring referendum approval of the District's qualified electors, our study and research discloses the following:
Historically reviewed, we find this Court has always held that special assessments of drainage districts for improvement benefits are levied against property owned in the district not on the basis of an ad valorem valuation of the property but, instead, to pay the pro-rata costs of drainage improvements specially benefitting the property owner's land. This distinction has long been observed by this Court. See Lainhart v. Catts, 73 Fla. 735, 75 So. 47, *899 text 53, and State v. Dixie Drainage District, Fla. 1964, 167 So.2d 553. See also, Cooley on Taxation, Vol. I, Fourth Ed., pp. 105-107, and Los Angeles County Flood Control District v. Hamilton, 177 Cal. 119, 169 P. 1028.
In Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486, 490-491, it was held with regard to the 1885 Constitution: "There is no express provision in our State Constitution as to the imposition of special assessments for local improvements ..."
Similarly in Lainhart v. Catts, supra, 75 So. at page 54, this Court held that pertinent provisions in the 1885 Florida Constitution "do not relate to special assessments, they do not limit or restrict the legislative powers in reference thereto ..."
Further judicial distinctions between special assessments for local improvements and general ad valorem taxes appear in the cases of Moran v. State ex rel. Montgomery, 111 Fla. 429, 149 So. 477, and City of Orlando v. State, Fla., 67 So.2d 673. It is quite clear therefrom that a special assessment represents a fixed lien for benefits upon a parcel of property in a drainage or other local improvement district, which when discharged by the property owner relieves him of any further responsibility to respond to a demand of the bondholders of the district to pay taxes to service their bonds as would be the case if the bonds were supported by ad valorem taxes and subject to recurring general levies.
The Circuit Court holds that the 1968 Florida Constitution places special assessments for improvement benefits in the category of ad valorem taxes.
We have carefully inspected pertinent provisions of the 1968 Florida Constitution and in particular Sections 9 and 12 of Article VII. We find nothing therein that places special assessments for local improvements under the restrictions pertaining to ad valorem taxes. We find no basis in the 1968 Florida Constitution for a different construction concerning special assessments for local improvements from that which obtained under the 1885 Florida Constitution.
As to the second point concerning the alleged invalidity of F.S. Section 298.11, F.S.A., insofar as it authorizes each property owner owning lands in the district to cast one vote for each acre of land owned by him or it in the election of supervisors of the district, we do not find this feature of the statute violates the "one man-one vote" principle.
We find that the "one man-one vote" principle is constitutionally inapplicable in the selection of supervisors of drainage districts. The functions of such supervisors can hardly be classed as the exercise of general governmental sovereign powers. The Legislature under authority of a long line of decisions can designate supervisors or a board of trustees for a drainage or other subordinate improvement district directly in special enabling legislation or otherwise provide for their designation than by an election. See State v. Ocean Shore Improvement Dist., 116 Fla. 284, 156 So. 433, which holds:
"A taxing district is not covered by that provision of the Constitution requiring that all officers be elected by the people or appointed by the Governor, consequently the Legislature is at liberty to require that bond trustees or supervisors of such districts be designated in other ways, and that voting in said districts be limited to property owners."
To the same effect see: Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449; State ex rel. Landis v. Reardon, 114 Fla. 755, 154 So. 868, and Town of Palm Beach v. City of West Palm Beach, Fla., 55 So.2d 566.
The Legislature was therefore free to decide by the enactment of F.S. Section 298.11, F.S.A., that the fairer plan is to allow all property owners, whether individuals, trustees, administrators or executors or *900 corporations resident or nonresident holding title to lands in the district, to select the supervisors on a per acreage vote basis rather than for the qualified electors residing in the district to select them. Actually, from the standpoint of fairness and non-discrimination it would appear more reasonable to allow the selection of drainage district supervisors on an owner-acreage vote basis than it would be to permit only the individual electors or freeholders resident in the district to make the selection. The relationship between land owned in a drainage district and special assessments thereon is much closer and more reasonable in terms of overall fairness than is generally the case between only individual electors or elector freeholders residing in a drainage district and special assessments on their lands. In most drainage districts in Florida usually the smaller percentage of owners of the land therein are qualified electors residing in the district.
"One man-one vote" appears to contemplate popular voting by living persons who have the qualifications of registered voters. Restriction of voting to such electoral participants in a drainage district supervisor election would disenfranchise many owners of lands in the district from having any effective voice in the affairs of the district.
As was explained in our discussion under the first point, special assessments are unlike general ad valorem taxes. Special assessments are levied to cover cost of special improvement benefits to a landownership irrespective of whether the owner is a resident elector or freeholder of the district. Such assessments become liens upon the parcels of land in the district and are not personal obligations of the taxpayers. Once the lien is discharged there is no authority in the bondholders to compel further special assessments on an owner's land. With this consideration in mind, it would appear that voting for supervisors according to amount of acreage owned bears a more reasonable relationship to the special assessments of drainage districts than does the "one man-one vote" principle restricted to individual resident voters.
United States Supreme Court decisions treating the "one man-one vote" principle appear to recognize that this principle is not absolutely applicable to selection of drainage district administrative supervisors.
Thus in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647, the Court said:
"... Assuming, arguendo, that a State might, in some circumstances, constitutionally limit the franchise to qualified voters who are also `specially interested' in the election, whether the statute allegedly so limiting the franchise denies equal protection of the laws to those otherwise qualified voters who are excluded depends on `whether all those excluded are in fact substantially less interested or affected than those the statute includes.'" Id. at p. 704, 89 S.Ct. at p. 1899.
And in Hadley v. Junior College District of Metropolitan Kansas City, Missouri, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45, the Court qualified application of the "one man-one vote" principle, saying,
"... It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with Reynolds, supra [Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506], might not be required ..." Id. at p. 56, 90 S.Ct. at p. 795.
It is our view that practically considered, popular election of supervisors of drainage districts would produce disproportionate representation and that the caveat or qualification of the Supreme Court of the United States to its "one man-one vote" principle well reasons an exception should be permitted in a case of this kind.
*901 Drainage districts have been held not to be general governmental units. See St. Louis, I.M. & S. Ry. Co. v. Board of Directors of Levee Dist. No. 2 of Jackson County, 103 Ark. 127, 145 S.W. 892, 895. It was held by this Court in Martin v. Dade Muck Land Co., 95 Fla. 350, 116 So. 449, that a drainage district is a statutory creation for special governmental purposes only.
The interlocutory order of the Circuit Court is quashed and the cause remanded for further proceedings not inconsistent herewith.
CARLTON, ADKINS and BOYD, JJ. and DREW, J. (Retired), concur.